**Herman Joseph HENRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1216–85.**

Court of Criminal Appeals of Texas.

April 8, 1987.

Walter Pink, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., & J. Harvey Hudson & Glenn Gotschall, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

MILLER, Judge.

Appellant pled "not guilty" to the charge of involuntary manslaughter. A jury found him guilty and assessed punishment at ten years confinement in the Texas Department of Corrections and a $5,000.00 fine. On appeal to the Fourteenth Court of Appeals, appellant's conviction was affirmed in an unpublished opinion. *Henry v. State*, No. B14–84–592CR, delivered October 10, 1985. We granted appellant's petition for discretionary review to consider whether the State's use of its peremptory strikes violated appellant's right to trial by a cross section of the community. We will reverse and remand to the Court of Appeals.

In order to respond to appellant's ground for review, the procedural facts of this case must be set forth. On appeal to the Court of Appeals, appellant contended that the trial court erred by allowing the prosecutor to use seven of his peremptory strikes to eliminate all the black venirepersons from the jury panel. In its decision of October 5, 1985, the Fourteenth Court of Appeals overruled appellant's point of error[1] because appellant had not shown that the prosecutor intentionally and systematically excluded blacks from the jury.

On November 9, 1985, appellant filed his petition for discretionary review in this Court, in which he alleged that the Court of Appeals had erred in overruling his point of error regarding the State's use of peremptory strikes. We granted appellant's petition on November 19, 1986. Since appellant's petition was filed, the United States Supreme Court has decided two cases relevant to appellant's contention: *Batson v. Kentucky*, 476 U.S. ——, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and *Griffith v. Ken-*

---

1. According to Tex.R.App.Pro. 74(d), effective September 1, 1986, allegations of error to the courts of appeals are to be labeled "points of error." See *Cordova v. State* (Tex.Cr.App. No. 69,096, delivered March 11, 1987).

*tucky,* —— U.S. ——, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). We will consider appellant's ground with reference to these two decisions.

In *Batson,* supra, the Supreme Court reiterated its observation that the State's purposeful or deliberate denial of jury participation to black persons because of race violated a defendant's rights under the Equal Protection Clause of the United States Constitution. It then found that the State could not challenge potential jurors solely on account of their race.

█ In order to invoke the protections set forth in *Batson,* supra, a defendant must establish purposeful discrimination by showing that:

1. he was a member of a cognizable racial group;

2. the prosecutor had exercised peremptory challenges to remove from the venire members of the defendant's race (peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate); and

3. the facts and and other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen on account of their race.

If the defendant raises an inference of purposeful discrimination through the State's use of its peremptory strikes, and the trial court determines that a prima facie case of discrimination exists, then the burden shifts to the prosecutor who must come forward with a neutral explanation for the challenges. The trial court must then determine whether despite the State's explanation, the defendant has established purposeful discrimination. The Supreme Court in *Batson,* supra, stressed that not just any explanation would do, and in fact some explanations would per se not be sufficient. *Batson,* supra, 106 S.Ct. 1722,

1723. By largely judging credibility of the prosecutor, content of the explanation and all other surrounding facts and circumstances, the trial judge must make a finding of fact concerning purposeful discrimination which should be given great deference by a reviewing court. *Batson,* supra, n. 21.[2]

█ If such purposeful discrimination is established, the trial court must remedy the situation. Because of the variety of jury selection practices followed in this nation, the Supreme Court was careful not to specify any exclusive remedy. Therefore while it enumerated the two most logical remedies, discharge of the panel and selection of a new jury from a new panel, or disallowing the strike(s) and reinstating the minority jurors, it declined to choose which would be more appropriate in any particular case. Clearly the view of the Court is that individual trial judges have the power to do either. *Batson,* supra, n. 24.

█ In *Griffith,* supra, the Supreme Court held that the *Batson* decision applies retroactively to all cases pending on direct appeal or not yet final at the time the latter decision was issued. In the case before this Court, appellant's petition for discretionary review had been filed and was pending at the time the *Batson* opinion was issued. Thus, appellant's conviction was not yet final when *Batson,* supra, was decided, and the law as set forth in that decision applies to appellant's case.

The record in the instant case shows that appellant's counsel made the following motion after concluding his voir dire examination of the prospective jurors:

"Just for the record, Your Honor, we would respectfully point out that the defendant is black and that there are seven black persons in the array and would respectfully request the Court to instruct the District Attorney not to use his strikes, preemptory [sic] strikes, to elimi-

---

**2.** In *Keeton v. State,* 724 S.W.2d 58 (Tex.Cr.App. 1987), the only other *Batson* issue case we have decided to date, we ourselves analyzed the facts and other relevant circumstances and made the determination that the defendant had not raised an inference of purposeful discrimination so as

to shift the burden to the prosecutor to come forward with a neutral explanation. Rehearing on the Court's own motion has this day been granted in *Keeton,* in order that we might reconsider our handling of the *Batson* issue there.

nate members of any minority race. Such an attempt would be an improper use of preemptory [sic] challenges and we would respectfully request that the State not use all of its preemptory [sic] challenges just to strike members of any minority race."

The trial court overruled the motion.

After the jury had been selected and sworn and the State had peremptorily struck all black prospective jurors from the panel, appellant's counsel made the following objection:

"Now comes the defendant, Herman Joseph Henry, Jr., by and through his attorney of record, and respectfully points out to the court that the members of the jury panel are all of the majority race, the white race, and we respectfully point out that prior to the selection of the jury we requested that the State not use all of its preemptory [sic] challenges to systematically strike all the blacks. That the record will reflect that there are seven black folk [sic] and the State used its strikes, seven of its ten strikes, to strike blacks off this jury and we respectfully object to the panel being selected as it is and we ask that this panel be struck and another panel brought forth under the proposition that the State unconstitutionally use preemptory [sic] challenges and that a prima facie case of that has been established by the number of jurors that there were black and the ones that were, in fact, struck. And we would respectfully ask that this jury panel be struck and another one sent so we can pick a fair representation of this community as it exists here in Harris County, Texas, so this man can get a fair trial by the jurors of its peers which would include all of the members of the community. All we are asking for, I think the ratio in Harris County, for black and white, is right at forty percent. We are not asking for four. We are only asking for one, just our fair share of their representation. We are not asking the deck be stacked, just give us one. And we would respectfully object to the State using seven of its ten strikes to strike the blacks."

In response to appellant's objection, the trial court stated:

"The Court has no authority to direct the State to use its challenges on any particular juror nor does he have a right to interfere with the striking of the defendant of any strikes he cares to make. Therefore, your motion is denied."

The State argues that despite the preceding objections, appellant did not place himself under the protections later announced in *Batson,* supra, even though those protections are now considered available to appellant. Thus, the first question we must address is whether appellant made a timely objection to the jury panel. In order to do so, we must examine the Supreme Court's cases to determine what procedural pattern was considered sufficient to invoke *Batson* protections.

In *Batson,* supra, the defendant's attorney moved to discharge the jury before it was sworn on the ground that the prosecutor's removal of the black venirepersons violated the defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution. The defendant's attorney also requested a hearing on the matter.

In *Griffith,* supra, the Supreme Court considered the cases of Randall Griffith and Willie Brown. With regard to Griffith's case, the opinion is not clear as to the exact procedural history, but states that:

"[The prosecutor used four of its five challenges to strike four of the five prospective black jurors. After the jury was selected, no black person remained on the jury.] Defense counsel expressed concern that Griffith was to be tried by an all-white jury. He asked the court to request the prosecutor to state his reasons for exercising peremptory challenges against the four prospective black jurors. The request was refused. ... Counsel then moved for discharge of the panel, alleging that the prosecutor's use of peremptory challenges to remove all but one of the prospective black jurors constituted a violation of Griffith's Sixth

and Fourteenth Amendment rights. ... The court denied the motion."

*Griffith,* supra, 107 S.Ct. at 710.

With regard to Brown's case, the Court stated:

"During jury selection, two venire panels were assembled. ... There were six prospective black jurors in the total venire. Four were excused for cause by the court and the other two were excused by the prosecutor's use of peremptory challenges. ... Defense counsel objected to the prosecutor's use of peremptory challenges to strike the black persons from the jury, claiming that petitioner was thereby denied a jury representative of the community.... No action was taken in response to that objection. [The number of prospective jurors in the first venire who were excused for cause resulted in a remaining number insufficient to constitute a full petit jury.]

As prospective jurors were being assembled for the second venire panel, the prosecutor called the jury clerk to inquire about the racial composition of the additional venire. At a hearing held later while the jury was deliberating, there was evidence that the prosecutor said to the clerk: 'We would like to have as few black jurors as possible.' ... The clerk testified, however, that she remembered the prosecutor's comment to be: 'Don't get any blacks on this jury.' ... the clerk went on to say that she did not alter the jury selection in any way in response to the prosecutor's comment. ... The District Court concluded that the prosecutor's contact with the jury clerk 'would have to be looked at and dealt with by someone,' ..., inasmuch as it fell 'into the category of possible prosecutorial misconduct,' ..., but that it did not affect the integrity of the selection of the jury. The court therefore concluded that a new trial would not be necessary if the jury convicted petitioner."

*Griffith,* supra, 107 S.Ct. at 711.

After holding that the *Batson* decision constituted a "new rule for the conduct of criminal prosecutions," *Griffith,* supra, 107 S.Ct. at 716, the Supreme Court held that the new rule would be applied retroactively to all cases, state or federal, pending on direct review or not yet final. Accordingly, both Griffith's and Brown's convictions were reversed, and the cases were remanded to the Kentucky Supreme Court and United States Court of Appeals for the Tenth Circuit, respectively, for actions consistent with the opinion.

■ In its brief, the State argues that the *Batson* protections should not apply to appellant because he did not object before the jury was sworn. We find nothing in the Supreme Court opinions which requires that, in cases pending on review or not yet final at the time the *Batson* case was decided, the defendant object before the jury was sworn. Rather, the opinions suggest *at most* that the defendant present the issue to the trial court.[3] We will then review the record of the instant case to determine whether appellant sufficiently raised the issue at trial.

■ As the preceding quoted portions of the record show, after the voir dire examination but before the jury was sworn, appellant requested that the prosecutor not be permitted to use peremptory strikes against black venirepersons. Then, after both sides had exercised their challenges and the jury was sworn, appellant objected to the State's use of peremptory strikes to eliminate the black venirepersons from the jury panel. We find that on the facts of this case, appellant sufficiently raised the issue of the State's use of its peremptory strikes at trial to invoke *Batson* protections on appeal.

■ By this ruling we do not hold that a defendant may from now on preserve the issue in the manner exhibited by this record. When this trial took place, *Batson,* supra, had not yet been decided; that opinion was issued while this case was on appeal. In cases tried after the *Batson* opin-

---

**3.** Because we find that appellant raised the issue at trial, we do not reach the question of whether *Batson* error may be raised for the first time on appeal in a case concerning a pre-*Batson* trial. We express no opinion on that issue.

ion was issued, the procedures outlined in that case must be followed. We prospectively declare that a defendant may make a timely objection within the *Batson* lines if such objection is made after the composition of the jury is made known but *before* the jury is sworn and the venire panel is discharged. It is at this time that the trial court has a number of options to correct any error discovered in a *Batson* hearing (including disallowing a prosecutor's strike and installing a minority member on the jury, should the court deem that to be the appropriate remedy, or discharging the jury and convening another venire panel, which might also be deemed appropriate in a given case).

Given our finding that appellant raised the issue at trial and preserved error for appeal, we must next determine the proper disposition of appellant's case. In *Batson*, supra, although the defendant objected to the prosecutor's removal of all black persons from the venire, the trial court rejected the defendant's objection without requiring the prosecutor to come forth with a neutral explanation for the strikes. The United States Supreme Court remanded the case for further proceedings: if the trial court decided that the facts raised an inference of purposeful discrimination, and the prosecutor failed to adequately explain his actions such that the trial court determined that purposeful discrimination was established, then the conviction would have to be reversed (there being no other option available to remedy the situation at that point). Similar action was taken in the cases disposed of in *Griffith,* supra.

 In the instant case, appellant clearly objected to the prosecutor's use of peremptory strikes. The trial court did not consider whether appellant had made a prima facie showing of discrimination, and then if so, whether the State had a neutral explanation for the strikes. We will therefore remand this case for further proceedings. Appellant's ground for review is sustained.

**4.** *Keeton,* supra, also held that the prohibition against racially motivated strikes applied to

We direct that this case be remanded to the Court of Appeals with instructions that it abate the appeal and order the trial court to make the determinations described in *Batson,* supra. The trial court must determine whether appellant made the prima facie showing of purposeful discrimination through the prosecutor's use of peremptory strikes, and if so, inquire as to whether the prosecutor had a neutral reason for striking the prospective jurors. If the State is unable to properly explain its use of peremptory strikes on minority members of the prospective jury panel such that the trial court concludes that purposeful discrimination was the sole motivating factor behind *any*[4] of the State's strikes, then appellant's conviction must be reversed and remanded by the Court of Appeals.

The judgment of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

each and every strike so motivated.