**Gary Don DeGRATE a/k/a Carrie Don DeGrate, Appellant,**

*v.*

**The STATE of Texas, Appellee.**

**No. 10–86–147–CR.**

Court of Appeals of Texas,
Waco.

Nov. 12, 1987.

Stanley G. Schneider, W. Troy McKinney, Houston, for appellant.

Vic Feazell, Crim. Dist. Atty., Sandy D. Simpkins, Scott Peterson, Asst. Dist. Attys., Waco, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendant DeGrate from conviction for aggravated robbery for which the jury assessed life imprisonment in the Texas Department of Corrections.

On January 4, 1986, at approximately 1:15 p.m., Dale Lindsey entered the Hillcrest Baptist Medical Center parking tower where his vehicle was parked. He observed one black male tapping on the glass of a vehicle and another black male using what appeared to be a wire to gain entry into another nearby car. The second subject told Lindsey that he had locked his keys in his car. Lindsey then approached his own pickup truck and noticed that the door had been opened and that the contents of his glove compartment were strewn across the seat and floorboard. He then commented aloud that it appeared his truck had been broken into.

The two subjects approached Lindsey. One of the men held a gun and pointed it at Lindsey telling him to lie down. Lindsey first attempted to cooperate, but changed his mind and stood facing the two men. The subject with the gun fired a shot, striking Lindsey in the chest. The man attempted to fire again but the gun jammed. Lindsey walked away from the men to the medical center's emergency room.

During the afternoon of the incident, police responded to a report that guns were being discharged at a residence approximately 20 blocks from the medical center. Upon entering the residence, one officer observed defendant "nodding off" on a couch, apparently under the influence of alcohol or drugs. The officers left the

residence after finding no witnesses or weapons.

Later the same evening, the police department stopped a vehicle owned by defendant which had run a red light. Defendant was a passenger in the backseat of the car. The driver was arrested for driving while intoxicated. The police conducted an inventory of the car, finding two C.B. radios among other items in the trunk. One of the C.B. radios had been stolen from the Hillcrest parking tower that afternoon.

Defendant was arrested and identified by Lindsey in a line-up on January 10, 1986.

Defendant appeals on 10 points.

■ Point 1 asserts the trial court erred in holding that defense counsel's failure to object during jury selection waived defendant's equal protection claim under *Batson v. Kentucky.*

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court reaffirmed that the State's purposeful discriminatory jury selection based on race through the use of peremptory strikes is a violation of defendants' rights under the Equal Protection Clause of the United States Constitution. Under *Batson,* a defendant must make a prima facie showing of discrimination by establishing that he is a member of a cognizable racial group, that the prosecutor used his peremptory strikes to remove potential jurors of defendant's race, and that other relevant facts raise an inference of discrimination. Once a prima facie showing is made, the burden shifts to the State to come forward with neutral explanations for its use of peremptory strikes. The trial court, considering all the circumstances, must then determine whether a case of purposeful discrimination has been established.

If a prima facie case has been established, the trial court may correct the problem by disallowing the strikes or discharging the venire panel and starting voir dire anew with a different panel. However, in order for the trial court to make the necessary determinations, defendant must make a timely objection. Defendant concedes no objection was made during jury selection as to the racial makeup of the jury due to the State's use of peremptory strikes. The Texas Court of Criminal Appeals holds:

> In cases tried after the *Batson* opinion was issued, the procedures outlined in that case must be followed. We prospectively declare that a defendant may make a timely objection within the *Batson* lines if such objection is made after the composition of the jury is made known but *before* the jury is sworn and the venire panel is discharged. It is at this time that the trial court has a number of options to correct any error discovered in a *Batson* hearing....

*Henry v. State,* 729 S.W.2d 732, 736–37 (Tex.Cr.App.1987) (emphasis original).

No such timely objection was made.

Point 1 is overruled.

■ Point 2 asserts defendant's right to a fair and impartial trial was violated when the State interjected extraneous shootings and crimes into its closing argument.

The State made the following argument during the guilt-innocence stage of the trial:

> Now folks, don't you think that after those men committed that robbery and shot the man and then the gun jammed on 'em and it wouldn't fire, that they started wondering, you know, "If we get in another fix like that next time, we want to make sure this thing is going to be working." And so they took it out and were firing it out there to see why the gun had jammed on them and why they hadn't been able to finish the job and kill that man there. They wanted a good working gun. I submit that's a reasonable deduction from the evidence.

Proper jury argument must fall within one of four general areas: summation of the evidence, reasonable deduction from the evidence, answer to argument of opposing counsel, and pleas for law enforcement. *McKay v. State,* 707 S.W.2d 23 (Tex.Cr. App.1985); *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App.1973). Even if we were to

find the argument improper, defendant failed to object and thus, as a general rule, has waived any error. *Duffy v. State,* 567 S.W.2d 197, (Tex.Cr.App.1978). Defendant contends that the statements were so prejudicial that an instruction to disregard would not have cured the harmful effect, thus no objection was necessary to preserve the error. *Romo v. State,* 631 S.W. 2d 504 (Tex.Cr.App.1982). Upon review of the State's argument, we do not find the statements to be so prejudicial as to require reversal.

Point 2 is overruled.

Points 3 through 5 assert defendant was denied effective assistance of counsel due to the following errors of trial counsel: failure to object to the racial composition of the jury, failure to object to improper statements in closing arguments, failure to preserve error when a biased juror was seated, and failure to challenge the seizure of defendant's automobile.

To determine whether a defendant was denied effective assistance of counsel, the reviewing court must apply the two-prong test in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). First, defendant must show that counsel's performance was deficient. If this first prong is established, defendant must affirmatively prove prejudice by showing a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Moore v. State,* 700 S.W.2d 193, 205 (Tex.Cr.App.1985). The controlling question in evaluating counsel's performance is "whether counsel's conduct so undermined the proper function of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 104 S.Ct. at 2064.

An examination of the record as a whole fails to support defendant's claim of ineffective assistance of counsel.

Points 3 through 5 are overruled.

Point 6 asserts the evidence was insufficient to support defendant's conviction for aggravated robbery based upon the State's theory of prosecution at trial.

Defendant contends that the State "built its case" on the theory that the victim was assaulted in the course of the theft of a C.B. radio from the automobile of Dorothy McCoy. Defendant argues that the evidence is insufficient to show he assaulted the victim while escaping after the theft of the C.B.

The Penal Code defines "in the course of committing theft" as "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft." Tex.Penal Code Ann. § 29.01(1) (Vernon 1974). The evidence shows the victim came upon two men in the parking tower. One was "tapping" on the glass of a car, the other was attempting to pry open a window with what appeared to be a wire. When the victim saw that his own car had been broken into, the two men ran up to him and shot him once before the gun jammed. A C.B. belonging to Dorothy McCoy was recovered from defendant's trunk on the night of the shooting. The C.B. had been stolen that day from McCoy's automobile which had been parked in the parking tower. We find the evidence sufficient to support the conviction.

Point 6 is overruled.

Point 7 asserts the trial court erred in denying defendant's motion to quash the indictment because it failed to allege an offense with sufficient certainty to put defendant on notice of the charge against him or to preclude a subsequent prosecution for the same offense.

When considering a motion to quash, the question is whether the face of the indictment sets forth in plain and intelligible language sufficient information to enable the defendant to prepare his defense. Subject to rare exceptions, an indictment which tracks the words of a penal statute is legally sufficient. *Marrs v. State,* 647 S.W.2d 286, 289 (Tex.Cr.App. 1983). The indictment in defendant's case tracks the language of the appropriate penal statute. *See* Tex.Penal Code Ann. § 29.01 (Vernon 1974).

Point 7 is overruled.

■ Point 8 asserts the charge was fundamentally defective because it failed to specify which of defendant's acts constituted the underlying theft.

The record reflects that no objection was made to the charge. In *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984), the Court of Criminal Appeals held that where no proper objection was made at trial and the defendant must claim fundamental error, the case will be reversed only if the error is so egregious and created such harm that the defendant did not receive a fair and impartial trial. No proper objection was made at trial, and in light of the entire charge, the evidence, and the arguments of counsel, we do not find egregious harm.

Point 8 is overruled.

■ Point 9 asserts defendant was denied his right to due process by the trial court's holding that the in-court identification was not tainted by a suggestive line-up.

Defendant's victim identified him in a line-up held 6 days after the shooting. Defendant claims the line-up was impermissibly suggestive in that defendant was the tallest subject, had the "bushiest" hair, and was the youngest looking.

The record reflects the victim was assaulted in a well-lit parking garage at approximately 1:15 in the afternoon. His assailant ordered him to lie on the ground and when he refused shot him from a distance of 6 to 8 feet. During the identification hearing, the victim testified that he picked defendant out of a line-up based solely on having encountered the defendant in the parking garage.

In determining the reliability of an in-court identification, the reviewing court must look to the totality of the circumstances, including: (1) the opportunity of the witness to view the defendant at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior descriptions; (4) the level of certainty expressed by the witness at the initial confrontation; and (5) the length of time between the crime and the confrontation. *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

From an examination of the record in its entirety, if the line-up were impermissibly suggestive, any error was harmless due to the reliable in-court identification by the victim.

Point 9 is overruled.

■ Point 10 asserts the trial court denied defendant's right to appeal by refusing to allow counsel to perfect a bill of exception at the hearing on the motion for new trial in order to identify the race of persons peremptorily struck by both the State and the defendant.

Under the procedure set forth in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), a defendant must make a prima facie showing that the State used peremptory challenges to strike prospective jurors of defendant's race. The State must at that point come forward with neutral explanations for the use of its peremptory strikes. Should the trial court find purposeful discrimination, it has the option to reinstate the minority members to the jury or to discharge the jury and begin again with a new venire panel. As stated in point 1, the defendant must make a timely objection after the composition of the jury is known but before it is sworn, in order to allow the court an opportunity to correct any error. *Henry v. State*, 729 S.W.2d 732, 737 (Tex.Cr.App.1987).

The instant case was tried after the *Batson* decision was handed down. Defendant made no objection to the racial makeup of the jury nor to the State's use of its peremptory strikes. The voir dire examination took place July 21, 1986. The hearing on defendant's motion for new trial was held October 6, 1986, at which time defendant subpoenaed those persons who had been struck from the venire panel. Defendant attempted to show the racial makeup of those struck by way of a bill of exceptions.

If the trial court had allowed defendant his bill of exception at the motion for new trial, we would at most know only the racial makeup of those persons struck from the panel. While this alone might raise an

inference of purposeful discrimination, the State would in effect be precluded from rebutting the defendant's prima facie case. The State's strikes had been made over two months prior to defendant's hearing on the motion for new trial. The State's prosecutor had undoubtedly tried other cases in the interim with other venire panels. It would be virtually impossible for the prosecutor to reconstruct defendant's voir dire examination and recall the reasons a particular venireman had been struck. Thus, the State could not possibly come forward at that late date with the necessary neutral explanations to rebut defendant's prima facie showing.

Point 10 is overruled.