Dele AGBOGUN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–86–00945–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 25, 1988.

Rehearing Denied Aug. 31, 1988.

Walter Pink, Houston, for appellant.

John B. Holmes, Dist. Atty. Harris County, Carol Cameron, Asst. Dist. Atty. Harris County, for appellee.

Before WARREN, DUGGAN and LEVY, JJ.

## OPINION

LEVY, Justice.

Appellant was found guilty of the misdemeanor offense of deceptive business practices, and the jury assessed punishment at confinement in jail for 30 days, probated for one year, and a $100 fine. Appellant asserts four points of error.

The record reflects that on June 28, 1985, the complainant presented a prescription for the drug "Flagyl" at the Lockwood Professional Pharmacy, where appellant was employed as a pharmacist. Appellant filled the prescription by substituting the generic drug Metronidazole in a bottle labeled as containing the brand name drug "Flagyl."

In his first point of error, appellant asserts that the trial court erred in failing to grant his motion for directed verdict because the evidence was legally insufficient to support the jury's verdict.

The familiar standard for reviewing the sufficiency of the evidence is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Sharp v. State,* 707 S.W.2d 611, 614 (Tex.Crim.App.1986); *Wilson v. State,* 654 S.W.2d 465, 471 (Tex. Crim.App.1983). The jury, being the sole judge of the facts and credibility of the witnesses, may choose to believe or not believe the witnesses, or any portion of their testimony. *Sharp,* 707 S.W.2d at 614.

A person commits the offense of deceptive business practices if in the course of business he intentionally, knowingly, or recklessly, or with criminal negligence, represents that a commodity or service is of a particular style, grade, or model if it is of another. Tex.Penal Code Ann. sec. 32.-42(b)(7) (Vernon 1974).

Appellant testified that he became a licensed pharmacist in 1982 and had been licensed for three years when the offense occurred. He stated that he was familiar with the rules and regulations pertaining to the dispensing of pharmaceutical drugs, and with what information a pharmaceutical label should contain and why.

Appellant testified that he substituted the generic drug Metronidazole for the prescribed "Flagyl" only after seeking and receiving the doctor's approval. The doctor involved was not subpoenaed and offered no testimony. Appellant claimed that he did not type the prescription labels that were placed on bottles of medication, and that this task was performed by one of the pharmacy technicians. On the occasion in question, appellant testified, he picked up a label and affixed it to the bottle in which he had previously placed Metronidazole, capped the bottle and handed it to a technician for delivery to complainant. Appellant also testified that after handing the technician the bottle, he told her that it was a substitute for "Flagyl" called Metronidazole. He then asked the technician if she wanted him to write it down for her, and she responded that she would "handle it." The bottle the complainant received was labeled "Flagyl."

The jury heard expert testimony that when a generic drug is substituted for a name drug, the generic drug name must appear on the bottle label.

Pharmacy technician Portia McGowan testified that only appellant and she were on duty on the date the offense occurred. She testified that she did not type the bottle label that was introduced into evidence as the incorrect label forming the basis of this prosecution. McGowan said that the standard procedure was for a technician to type the prescription and lay it to one side

for the pharmacist to fill. She further stated that she did not know who had typed the label and that appellant did not tell her that he was substituting a generic product for complainant's prescription.

The jury instruction contained the following:

A person commits the offense of a deceptive business practice if in the course of business he intentionally or knowingly represents that a commodity is of a particular style or model if in fact it is of another.

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

. . . .

Now, therefore, if you believe from the evidence beyond a reasonable doubt that the defendant, DELE J. AGBOGUN, in Harris County, Texas, on or about the 28th day of June, 1985, while in the business of dispensing pharmaceutical prescriptions and in the course of operating said business, the defendant did then and there unlawfully, intentionally or knowingly commit a deceptive trade practice by representing that a commodity, namely a drug, was of a particular style or model when it was of another, to wit: representing a drug dispensed to ... [complainant] to be Flagyl 250 mg, whereas said drug was in fact a generic drug of unknown substance then you will find the defendant guilty.

If you do not so believe or you have a reasonable doubt thereof you will find the defendant not guilty.

You are instructed that it is a defense to prosecution that the defendant through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense.

Therefore, if you believe beyond a reasonable doubt that the defendant, DELE J. AGBODUN, committed the offense of deceptive trade practice as charged in the information but you further believe, or have a reasonable doubt thereof, that the defendant, DELE J. AGBODUN, through mistake formed a reasonable belief that the doctor allowed him to fill the prescription in question with a generic drug and label the container with the brand name drug as stated in the written prescription, then you will find the defendant not guilty.

Appellant urges that the elements of sec. 32.42(b)(7) have not been proved. Upon applying the appropriate standard of review, we disagree and conclude that the jury had sufficient evidence before it to justify its finding beyond a reasonable doubt that all the elements of the offense charged were proved, and that appellant did not form a reasonable but mistaken belief that he had the doctor's permission to fill the prescription with a generic drug and then label the container with the brand name drug.

Appellant's first point of error is overruled.

Appellant avers in his second point of error that the trial court erred in refusing to allow him to examine and have a copy of the prescription contained in the State's file, pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). *Brady* held that the withholding or suppression by the prosecution of evidence favorable to the accused violated due process where the evidence is material either to guilt or to punishment. *Id.*

Appellant has failed to include a copy of the prescription in the appellate record, thereby presenting nothing for this Court's review. In any event, appellant's attorney clearly informed the trial court that at a time previous to trial, the State

had made the prescription available for his inspection. He admitted that he had already seen the prescription and wished merely to inspect it again for purposes of review and to refresh his memory. Additionally, the trial court inspected the prescription and found that it was not exculpatory. Even if appellant had placed the prescription in the record before this Court for review, *Brady* would not apply to the case at bar because appellant had, in fact, viewed the prescription upon his request; thus, no *Brady* suppression had occurred. *See Coe v. State*, 683 S.W.2d 431, 438 (Tex. Crim.App.1984).

Appellant's second point of error is overruled.

Appellant contends in his third point of error that the trial court erred in allowing the State's expert witness to infer that appellant had violated the "pharmacy law," thereby also inferring that appellant was guilty of the offense as charged.

Under the Texas Rules of Criminal Evidence, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Tex.R.Crim.Evid. 702.

■ Special knowledge of the specific matter about which his expertise is sought, which qualifies a witness to give an expert opinion, may be derived entirely from a study of technical works, specialized education, practical experience, or varying combinations thereof; what is determinative is that his answers indicate to the trial court that he possesses knowledge that will assist the jury in drawing inferences regarding fact issues more effectively or reliably than the jury could do unaided. *Holloway v. State*, 613 S.W.2d 497, 501–02 (Tex.Crim.App.1981).

■ Appellant asserts that Robert Enoch's testimony did not comply with rule 702, but appellant fails to provide a basis for this contention. Whether a witness offered as an expert possesses the required qualifications is a question that rests largely within the discretion of the trial court, and the decision to admit or exclude the proposed opinion testimony will not be disturbed unless a clear abuse of discretion is shown. *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Crim.App.1981). Robert Enoch was a licensed pharmacist with 36 years experience and was employed with the Texas Department of Human Services as a consultant pharmacist in a venture drug program. Appellant does not explain how Enoch was not an expert in pharmaceutical knowledge and procedure, and the record does not reflect an abuse of discretion in allowing Enoch to testify as such an expert.

Appellant also complains that a comment by the court tended to imply to the jury that the judge thought that the expert's opinion concerning appellant's guilt was to be given greater weight than other evidence presented. Although appellant fails to specify which comment he finds objectionable, a review of the complained of testimony reveals that the judge did comment, in ruling on an objection by appellant, that an expert witness is allowed to testify about an ultimate issue. The court's comment was not erroneous and, in fact, was an appropriate statement of law. Tex.R.Crim.Evid. 704.

Without dispute, it would have been improper for the trial court to have allowed any opinion evidence as to appellant's guilt or innocence. *Mays v. State*, 563 S.W.2d 260, 263 n. 3 (Tex.Crim.App.1978). However, Enoch's testimony did not constitute opinion testimony as to the guilt of appellant, but rather pertained to the procedures commonly followed within the pharmacy profession, viz., that a bottle containing a generic drug must be labeled with the name of the generic and not the "name" drug. This testimony was properly admitted in order to assist the jury pursuant to rule 702.

■ Regarding Enoch's complained of response, "under pharmacy law," appellant both asked for and received a jury instruction to disregard that response. Any error that may have existed was thereby cured.

*Davis v. State,* 645 S.W.2d 817, 818 (Tex. Crim.App.1983).

Appellant's third point of error is overruled.

Appellant asserts in his fourth point of error that the trial court erred in denying his motion to dismiss the jury panel where it was shown that appellant was black and all prospective black jurors were struck by the State without explanation through the use of peremptory strikes.

It is well established that the State's purposeful or deliberate denial of jury participation to black persons because of race is violative of a defendant's rights under the Equal Protection Clause of the United States Constitution. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); *Henry v. State,* 729 S.W.2d 732, 734 (Tex.Crim.App.1987). Potential jurors cannot be challenged by the State solely on account of race. *Batson,* 106 S.Ct. at 1712; *Henry,* 729 S.W.2d at 734.

To invoke the protection of *Batson,* the defendant must first establish purposeful discrimination by showing that:

1.  he was a member of a cognizable racial group;
2.  the prosecutor had exercised peremptory challenges to remove from the venire members of the defendant's race (peremptory challenges constitute a jury selection practice which permits those to discriminate who are of a mind to discriminate); and
3.  the facts and other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremen on account of their race.

If the defendant raises an inference of purposeful discrimination through the State's use of its peremptory strikes, and the trial court determines that a prima facie case of discrimination exists, then the burden shifts to the prosecutor who must come forward with a neutral explanation for the challenges. The trial court must then determine whether despite the State's explanation, the defendant has established purposeful discrimination.... By largely judging credibility of the prosecutor, content of the explanation and all other surrounding facts and circumstances, the trial judge must make a finding of fact concerning purposeful discrimination which should be given great deference by a reviewing court.

*Henry,* 729 S.W.2d at 734 (citations omitted).

■ Appellant's motion that the jury be dismissed was made after the jury was sworn. *Henry,* 729 S.W.2d at 737, requires that objections based on *Batson* be urged before the jury is sworn and the venire panel is discharged. Appellant has not waived this point on appeal, however, because the trial of appellant's case predates the *Henry* decision by five months.

■ On appeal, appellant urges that as a black man, he is a member of a cognizable racial group, and that the State excluded all blacks from the jury by peremptory challenge solely because they were black and for no other reason. The record on appeal contains no direct proof that the two complained of stricken venirepersons were in fact black. However, it may be assumed that the stricken venirepersons were black because the trial court allowed a hearing, thereby indicating that appellant had successfully raised an inference that the prosecutor had used her peremptory challenges to exclude prospective jurors solely because of their race.

Appellant's defense attorney questioned the prosecutor concerning the two complained of peremptory strikes by the State. The prosecutor testified that she did strike the two women. She based her first strike on the amount of eye contact juror number three maintained with the defense attorney and on the amount of agreement and affirmative nods that she showed when discussing the case with him. The prosecutor stated that she did not feel that juror number three and she were communicating.

The prosecutor further testified that juror number eight was very young and was stricken because of her age. Another contributing factor was the amount of eye contact juror number eight exhibited with the defense attorney, as well as her head nodding and speaking out loud after ques-

tions by the defense that had not been directed solely to her.

Following her testimony, the prosecutor sought and received stipulations that juror number five, a black person, had been stricken by the defense and that juror number six, also a black person, had not been stricken by the State. In reviewing the "Final Jury List," it appears that juror number six actually served on the jury that heard appellant's case.

It is apparent from the record before this Court that the State did not exclude all blacks from the jury by use of its peremptory challenges and, in fact, left on the venire as many black potential jurors as it struck.

Based on the evidence presented for this Court's review, and bearing in mind the instructions of both the United States Supreme Court and the Texas Court of Criminal Appeals, that the trial judge's findings concerning purposeful racial discrimination are to be given great deference, we conclude that such discrimination has not been proven and that the trial court did not err in overruling appellant's motion that the jury panel be dismissed.

Appellant's fourth point of error is overruled.

The trial court's judgment is affirmed.