Peter Goldman LEVY, Appellant,

v.

The STATE of Texas, Appellee.

No. B14–86–872–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 10, 1988.

Rehearing Denied April 7, 1988.

Charles Freeman, Houston, for appellant.

John B. Holmes, Jr., Carol M. Cameron, Houston, for appellee.

Before PAUL PRESSLER, DRAUGHN and ELLIS, JJ.

## OPINION

ELLIS, Justice.

Appellant, Peter Goldman Levy, appeals from a judgment of conviction for the offense of aggravated assault. TEX.PENAL CODE § 22.02. He pled not guilty to a jury and was convicted. Appellant pled true before the court to a prior felony conviction alleged as enhancement. The court found the enhancement allegation true and assessed punishment at twelve years' confinement in the Texas Department of Corrections, pursuant to TEX. PENAL CODE ANN. § 12.42(a).

In his sole point of error appellant alleges the trial court committed reversible error by failing to discharge the jury panel pursuant to a motion he urged prior to the court's administering the oath to the impanelled jury. Appellant, who is black, argued in his motion that the State peremptorily struck two black jurors in a purposefully discriminatory manner. We affirm.

The record shows that forty persons composed the original venire. The trial court excused two for cause. The State peremptorily struck ten persons, including two blacks, Venirepersons Seven and Ten. One black person, Juror Number Seventeen, sat on the impanelled jury. The trial court denied appellant's motion to discharge the jury. In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the United States Supreme Court held that a defendant could establish a prima facie case of purposeful discrimination, in violation of the equal protection guarantees of the fourteenth amendment, based on the prosecutor's use of peremptory strikes against members of the defendant's race. *Batson*, 476 U.S. at 96–99, 106 S.Ct. at 1722–24.

Although he did not refer specifically to *Batson* when he urged the trial court to discharge the jury, we conclude, based on the timing of his motion and his equal protection argument, that appellant raised a *Batson* challenge to the prosecutor's using two peremptory challenges to strike Venireperson Seven and Ten. *See Batson*, 476 U.S. at 84–85, 106 S.Ct. at 1716; *Rodgers v. State*, 725 S.W.2d 477, 479 (Tex.App. —Houston [1st Dist.] 1987, no pet.)

Following appellant's motion, the trial court heard testimony from appellant, his counsel and the prosecutor. Appellant established that he and his counsel are black, that the complaining witness is white, and that the prosecutor peremptorily struck two black venirepersons. The trial court then allowed appellant to question the prosecutor's motives for the strikes, and heard each side's arguments concerning the merits of appellant's motion to discharge the

jury. The foregoing facts and circumstances support our conclusion that the trial court impliedly determined that appellant established a prima facie case of purposeful racial discrimination. When appellant presented his prima facie case, the burden of proof shifted to the State to come forward with neutral explanations for peremptorily striking Venirepersons Seven and Ten. *Batson*, 476 U.S. at 96–98, 106 S.Ct. at 1723–24.

Appellant's trial took place in August, 1987, four months after the *Batson* decision. However, the trial court did not have the benefit of recent decisions of the Court of Criminal Appeals which, pursuant to *Batson*, 496 U.S. at 98–99, 106 S.Ct. at 1724, established guidelines for Texas trial courts conducting *Batson* hearings. *See Keeton v. State*, 724 S.W.2d 58 (Tex.Crim.App.1987) (opinion on court's own motion, en banc); *Henry v. State*, 729 S.W.2d 732 (Tex.Crim.App.1987). During oral argument appellant suggested that this court remand his case to the trial court for a hearing consistent with the *Keeton* and *Henry* guidelines. We find no need for a remand. Notwithstanding a lack of guidelines interpreting *Batson*, the trial court permitted appellant to state his purposeful racial discrimination case and to cross examine the prosecutor concerning his motives for striking two black members of the venire. The court heard arguments from both sides on appellant's motion to discharge the jury. We find the trial court's hearing complied fully with *Batson*. Consequently, there is no need for a remand.

According to *Tompkins v. State*, No. 68,870 slip op. (Tex.Crim.App. Oct. 7, 1987) (not yet reported, en banc), the trial court has a two-fold role when a defendant presents a prima facie case of purposeful racial discrimination based on the State's peremptorily striking prospective jurors of his race. The court must first determine whether the State's explanations, which must be racially neutral, are legally sufficient to create a fact issue to rebut the defendant's case. *Tompkins*, at 7–8. If the court determines that the reasons the State offers are, at a minimum, adequate to support a ruling on the motion favorable to the State, the court must then weigh those reasons against the defendant's prima facie case to determine whether the accused has met his burden to establish purposeful discrimination by a preponderance of the evidence. *Tompkins*, at 8.

As in evaluating any essentially factual inquiry, the trial court must weigh the evidence and determine the credibility of the witnesses in assessing a defendant's purposeful discrimination allegations. *Tompkins*, at 8. As in reviewing any essentially factual inquiry, this court may reverse the trial court's resolution of the parties' allegations only if no rational trier of fact could have failed to find them true by a preponderance of the evidence. *Id. Tompkins* specifically proscribes our substituting our assessment of either evidentiary weight or the witnesses' credibility for that of the trial court. *Id.*

In response to questioning by appellant's counsel, the State offered two reasons for peremptorily striking Venireperson Seven, a librarian. One explanation was that she served on a criminal jury which failed to reach a verdict. His second reason was that he preferred jurors whose jobs put them in contact with people, and that other members of the venire had such jobs. Although appellant contends that the State failed to question Venireperson Seven, the record clearly demonstrates that she voluntarily told the prosecutor she was personally acquainted with appellant's counsel's parents, and that he questioned her about her ability to be impartial under those circumstances. The State offered three reasons for striking Venireperson Ten. He noted that she was employed in a clerical position which, in his opinion, involved limited responsibility, that her husband was unemployed, and that she appeared bored and antagonistic during his voir dire.

We find the prosecutor's reasons clear, reasonably specific, and plausible. His explanations are likewise racially neutral because they address concerns such as employment, facial expressions, and possible pre-disposition in favor of the defense. *See Rasco v. State*, 739 S.W.2d 437, 439 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd,

untimely filed); *Chambers v. State,* 724 S.W.2d 440, 441–42 (Tex.App.—Houston [14th Dist.] 1987, no pet.); *Rodgers,* 725 S.W.2d at 481. In addition, the prosecutor's striking Venireperson Seven based on her having sat on a criminal jury which failed to reach a verdict is a reason reasonably related to efficient trial of the case. *See Rodgers,* 725 S.W.2d at 481. In short, in addition to denying racial motives for striking Venirepersons Seven and Ten, the State offered racially neutral explanations. As a result, appellant retained the burden to prove his purposeful discrimination case by a preponderance of the evidence. *See Tompkins,* at 7–8.

The trial court resolved each side's allegations by denying appellant's motion to discharge the jury. We conclude the trial court impliedly found no purposeful discrimination in the State's use of its peremptory challenges to strike Venirepersons Seven and Ten. There is nothing in the record to suggest that a rational trier of fact could have failed to find appellant's allegations of purposeful discrimination true by a preponderance of the evidence. Therefore, and also because we must view the record as supporting the trial court's resolution of the contentions appellant and the State advanced, *Tompkins,* at 8, we fail to find error in the trial court's refusal to discharge the jury and overrule appellant's sole point of error.

■ In resolving appellant's point of error, we have inferred the trial court's findings. Our disposition therefore raises the following question. Does *Batson* require a trial court to enter specific findings of fact and conclusions of law when it concludes that a defendant has *failed* to prove his prima facie case of purposeful racial discrimination by a preponderance of the evidence? Although entering findings of fact and conclusions of law may well be the better practice, we conclude that *Batson* does not expressly require a trial court to enter specific findings and conclusions if it determines that the State has not purposefully discriminated based on race.

Pursuant to *Batson,* trial courts must determine *whether* the defendant has es-

tablished purposeful racial discrimination. 461 U.S. at 96–98, 106 S.Ct. at 1723–24. In ordering trial courts to conduct *Batson* hearings and in reviewing *Batson* hearings, our Court of Criminal Appeals has construed *Batson* to require a trial court to make findings of fact and conclusions of law *if* the trial court determines that a defendant has established purposeful racial discrimination. *Tompkins,* at 8; *De-Blanc v. State,* 732 S.W.2d 640, 642 (Tex.Crim.App.1987) (en banc); *Williams v. State,* 731 S.W.2d 563, 564 (Tex.Crim.App. 1987) (en banc), *remanding* 682 S.W.2d 538 (Tex.Crim.App.1985) (en banc), *vacated mem.* — U.S. ——, 107 S.Ct. 1266, 94 L.Ed.2d 128 (1987); *Keeton v. State,* 724 S.W.2d at 66; *cf., Henry v. State,* 729 S.W.2d at 734 (ordering *Batson* hearing and requiring trial court to make a fact finding concerning purposeful racial discrimination).

We find nothing in either *Batson* or the opinions of the Court of Criminal Appeals construing *Batson* which requires a trial court to enter findings and fact and conclusions of law after determining that the defendant has *not* established purposeful racial discrimination.

The judgment of the trial court is affirmed.