Affirmed and Memorandum Opinion filed June 8, 2010



 



In The

 

Fourteenth Court of
Appeals

                                                                                          



NO. 14-08-01119-CR



 

Raymond Lee Shaw, Appellant

V.

The State of Texas, Appellee

 



On Appeal from the 339th
District Court

Harris County, Texas

Trial Court Cause No. 1116673



 

MEMORANDUM  OPINION

 

Appellant Raymond Lee Shaw was convicted of murder, a
first degree felony, and sentenced to fifteen years in the Institutional
Division of the Texas Department of Criminal Justice.  On appeal, he contends
the court erred by (1) denying his request for a jury instruction on criminally
negligent homicide and (2) denying two of his Batson[1]
challenges.  We affirm.

 

 

I.     Background

The complainant, Jonathon, and his sister were
playing at appellant’s house with appellant’s son and two other young boys. 
Appellant told his son that he wanted the children to leave; that led to
conflict and shoving between the two.  Appellant got angry, told the children
to leave, and they complied.  However, upon leaving, Jonathon realized he had
left his wallet at appellant’s house, so his sister and one of the boys
returned to the house to look for it.  Jonathon and the other boy did not go
back to the house.

At that point, appellant grabbed his sawed-off
shotgun and left the house, heading for Jonathon and the other boy.  Appellant’s
son called out to his father, “They [are] kids, Daddy.  Daddy, don’t, don’t.” 
Appellant’s son unsuccessfully wrestled appellant for his gun.  After he pulled
loose, appellant chased after the two boys with his gun in the air, and they
fled.  Jonathon’s asthma, however, eventually forced him to slow down and catch
his breath.  Appellant overtook Jonathon, aimed his gun at him, and fired.  

Jonathon was hit by four shotgun pellets: two in the
back of his head, one in his shoulder, and one in his back.  Appellant broke
open the gun and reloaded it.  At that point, Jonathon collapsed from his
wounds. 

Jonathon’s sister rushed to Jonathon and cradled him
in her arms.  Several of appellant’s neighbors applied pressure to Jonathon’s
wounds, but Jonathon died on the grass where he fell.  The police arrived,
arrested appellant, and took him to the police station.  There, he gave a
statement describing the shooting.  He was subsequently charged with murder.  

At trial, appellant testified that the shooting was
an accident.  He claimed to have acquired the shotgun from his mother-in-law
and fired it only once prior to the shooting.  He could not remember any
details of the shooting, but he did remember giving his statement at the police
station.  He also acknowledged (and actually demonstrated) that he knew how to
load and shoot the shotgun.  Two of appellant’s neighbors, Louis Hunter and
Ronald Thibodeaux, testified they had seen the shotgun at appellant’s home
prior to the shooting.  

Houston Police Officer Allen Boskey testified that
appellant’s shotgun is a single-action firearm.  Officer Boskey testified that
the hammer on a single-action firearm must be manually cocked prior to shooting
each round.  Officer Boskey further testified that a person shooting appellant’s
shotgun would need to hold it tightly with two hands while firing it or else
the shotgun would fly from that person’s hands, thus diminishing the
possibility of an accidental discharge.  Hunter testified that he took the
shotgun from appellant’s hands after appellant shot Jonathon.

The court instructed the jury on murder and
manslaughter, but it denied appellant’s request for an instruction on
criminally negligent homicide.  The jury found appellant guilty of murder, and
sentenced him to fifteen years’ imprisonment.  On appeal, appellant contends
the court erred by (1) denying appellant’s request for a jury instruction on
criminally negligent homicide and (2) denying two of appellant’s Batson challenges. 


II.     Discussion

A.     Jury Charge    

A defendant is entitled to a jury instruction on a
lesser-included offense of the offense charged if there is some evidence that,
if the defendant is guilty at all, he is guilty only of the lesser
offense.  Guzman v. State, 188 S.W.3d 185, 188 (Tex. Crim. App. 2006). 
Criminally negligent homicide is a lesser-included offense of murder.  See
Grotti v. State, 273 S.W.3d 273, 276 (Tex. Crim. App. 2008).  Thus, we must
consider whether there is any evidence in the record that would permit a
rational jury to determine that appellant is guilty only of criminally
negligent homicide.  See Guzman, 188 S.W.3d at 188; Bignall v. State,
887 S.W.2d 21, 23 (Tex. Crim. App. 1994).  In other words, the evidence must
establish criminally negligent homicide as a valid, rational alternative to
murder.  See Hall v. State, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007).

            The offenses of
murder, manslaughter, and criminally negligent homicide differ in the culpable
mental state required for each.  See Tex. Penal Code Ann.  §§ 19.02(b)(1),
19.04(a), 19.05(a) (Vernon 2003).  A person who causes the death of another
commits (a) murder if he acts intentionally or knowingly; (b) manslaughter if
he acts recklessly; and (c) criminally negligent homicide if he acts in a
criminally negligent manner.  See id.  Generally speaking, the Penal
Code describes these categories of conduct as follows:

(a)  A person acts intentionally
with respect to the nature of his conduct or result when it is his conscious
objective or desire to engage in the conduct or cause the result. 

(b)  A person acts knowingly
with respect to the nature of his conduct or to circumstances surrounding his
conduct when he is aware of the nature of his conduct or that the circumstances
exist, and that his conduct is reasonably certain to cause the result.  

(c)  A person acts recklessly
. . . with regard to the circumstances surrounding his conduct or the result of
his conduct when he is aware of but consciously disregards a substantial and
unjustifiable risk that the circumstances exist or the result will occur.  The
risk must be of such a nature and degree that its disregard constitutes a gross
deviation from the standard of care that an ordinary person would exercise
under all the circumstances as viewed from the actor’s standpoint.

(d)  A person acts with
criminal negligence . . . with respect to the circumstances surrounding his
conduct or the result of his conduct when he ought to be aware of a substantial
and unjustifiable risk that the circumstances exist or the result will occur. 
The risk must be of such a nature and degree that the failure to perceive it
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor’s
standpoint.  

Tex. Penal Code Ann. § 6.03 (Vernon
2003) (emphases added).  

            When considering
whether an instruction on criminally negligent homicide was required, we
examine the case in light of its particular facts and circumstances and
determine whether the defendant was aware of the risk of death associated with
his conduct.  See Thomas v. State, 699 S.W.2d 845, 850 (Tex. Crim. App.
1985).  For the instruction to be required, the record must contain evidence
showing the defendant was unaware of the risk of death associated with his
conduct.  See § 6.03(d); Mendieta v. State, 706 S.W.2d 651, 653
(Tex. Crim. App. 1986).  Evidence that a defendant knew a gun was loaded, was
familiar with guns and their potential for injury, and pointed a gun at
another, indicates that the defendant was aware of a risk created by that
conduct and disregarded the risk.  Thomas, 699 S.W.2d at 850; Salinas
v. State, 644 S.W.2d 744, 746 (Tex. Crim. App. 1982) (holding that a
defendant who exhibits a loaded, cocked pistol is presumed to be aware of the
risk, regardless of whether he is aware of actually shooting the deceased).  

The evidence here tends to show appellant was, at the
very least, aware of the risk associated with his conduct.  Appellant left his
house with his shotgun loaded and with several extra shells in his pocket. 
Appellant refused his son’s pleas not to shoot the boys and his son’s attempts
to wrestle the shotgun away from him.  Appellant chased after the boys with his
gun.  As Jonathon slowed down to catch his breath, appellant overcame him,
aimed, and fired.  Prior to shooting each round, appellant had to manually load
and cock the shotgun.  After shooting his first round and hitting Jonathon, he
opened the shotgun and reloaded it.  

We cannot hold the evidence here raised the inference
that appellant was unaware of the risk associated with his conduct.  Id. 
Accordingly, we overrule appellant’s first issue.[2]

B.     Batson
Challenges

            In his second
issue, appellant contends the trial court erred by denying his Batson challenges
to two of the State’s peremptory strikes which the State used on two
African-American jurors, Juror 30 and Juror 43.  Generally, under Batson,
a party may not exercise its peremptory strikes during jury selection to
exclude a potential juror solely on the basis of race or ethnicity.  See
Batson v. Kentucky, 476 U.S. 79, 85–86 (1986).  

A defendant objecting that the State has violated Batson
must make a prima facie showing of racial discrimination in the
State’s exercise of its peremptory strikes.  See Herron v. State, 86
S.W.3d 621, 630 (Tex. Crim. App. 2002).  If the defendant makes a prima
facie showing, a presumption arises that the peremptory challenges were
used to discriminate on a racial basis, and the burden then shifts to the State
to come forward with race-neutral explanations for the strikes.  Herron,
86 S.W.3d at 630; Keeton v. State, 749 S.W.2d 861, 862 (Tex. Crim. App.
1988).  

            To justify its
strikes, the State must present race-neutral explanations that are
nondiscriminatory, clear, specific, and legitimate, and they must relate to the
particular case to be tried.  Keeton, 749 S.W.2d at 867–68.  The State’s
explanations, however, need not rise to the level of a challenge for cause.  Id.
at 868.

Once the prosecutor has articulated race-neutral
explanations, the burden shifts back to the defendant to show the explanations
are actually a pretext for discrimination.  See Herron, 86 S.W.3d at
630.  The trial court then determines whether the defendant carried his burden
of proving discrimination.  Id.  Because the trial court’s decision
often turns largely on an evaluation of credibility, we give the trial court’s
decision great deference and will not overturn it on appeal unless it is
clearly erroneous. Id.

            1.   Prima
Facie Showing

At trial, appellant alleged the State struck Juror 30
and Juror 43 based on their race.

2.   Race-Neutral Explanations

            The State’s
race-neutral explanation for striking Juror 30 was that the juror did not
assess punishment in a previous trial in which he sat as a juror.  A juror’s
record during prior jury service may be a race-neutral explanation for striking
a venire person.  See Levy v. State, 749 S.W.2d 176, 178 (Tex.
App.—Houston [14th Dist.] 1988, pet. ref’d) (prior service on a criminal jury
that fails to reach a verdict is a race-neutral explanation for striking a
juror); Irvine v. State, 857 S.W.2d 920, 926 (Tex. App.—Houston [1st
Dist.] 1993, pet. ref’d) (same); Webb v. State, 840 S.W.2d 543, 545–46
(Tex. App.—Dallas 1992, no pet.) (same); Invatury v. State, 792 S.W.2d
845, 848 (Tex. App.—Dallas 1990, pet. ref’d) (bad record during prior jury
service serves as a race-neutral explanation for striking a juror).  

            Additionally, the
presumption of discrimination may be overcome by showing that the State relied
upon the same characteristic to challenge a juror of a difference race.  Keeton,
749 S.W.2d at 868.  We note that, in the present case, the State struck a
Caucasian male because he previously served on a jury unable to reach a verdict—a
reason similar to that for striking Juror 30.

            The
State’s race-neutral explanation for striking Juror 43 was that he was employed
by the Texas Department of Corrections.  Striking a juror based on his
occupation does not violate Batson.  Harris v. State, 996 S.W.2d
232, 235 (Tex. App.—Houston [14th Dist.] 1999, no pet.); Barnes v. State,
855 S.W.2d 173, 174 (Tex. App.—Houston [14th Dist.] 1993, pet. ref’d).  Where,
as here, the State indicates that it struck a prospective juror based on his
employment and that the State, in the past, has had poor jury experience with a
member of that trade or profession, the reason is a race-neutral explanation.  See
id. 

            3.  
Rebuttal

            Appellant argues
that the trial court is not bound to accept all of the prosecutor’s
explanations at face value, and he claims that the five nonexclusive factors set
forth in Keeton weigh heavily against the legitimacy of a race-neutral
explanation.  See Keeton, 749 S.W.2d at 866.  Those factors are whether
the prosecutor (1) provided an explanation based on a group bias where the
group trait is not shown to apply to the challenged juror specifically; (2)
treated venire members with the same or similar characteristics as the
challenged juror differently; (3) examined venire members differently; (4)
failed to meaningfully question the challenged juror; and (5) provided an
explanation for striking the juror that is unrelated to the facts of the case. 
Id.  

While these factors may be considered, they are not
determinative.  Vargas v. State, 838 S.W.2d 552, 554 (Tex. Crim. App.
1992).  The overriding standard is still that which we apply here: whether the
trial judge’s decision was supported by the record so that it was not clearly
erroneous.  Id.  

Appellant relies on the second, fourth, and fifth Keeton
factors in contending that the State’s proffered explanation for striking Juror
30 is invalid.  He contends that the State treated venire members with the same
or similar characteristics as the challenged juror differently, failed to
meaningfully question the challenged juror, and provided an explanation for
striking the juror that is unrelated to the facts of the case.  We reject this
argument because the record shows the State asked Juror 30 whether he had
assessed punishment in a previous case, explained it struck him for his prior
record as a juror, and struck a Caucasian juror for a similar reason.

Appellant relies on the first, fourth, and fifth Keeton
factors in contending that the State’s proffered explanation for striking Juror
43 is invalid.  He contends that the State provided an explanation based on a
group bias where the group trait is not shown to apply to the challenged juror
specifically, failed to meaningfully question the challenged juror, and
provided an explanation for striking the juror that is unrelated to the facts
of the case.  We reject this argument because the record shows the State
meaningfully questioned Juror 43 about his employment with the Department of
Corrections and obtained his views on sentencing.  The prosecutor justified the
strike by stating that, based on his experience, a worker with the Department
of Corrections would have undesirable employment experience and potential bias
on sentencing issues. 

For the reasons set forth, we cannot conclude on this record
that the trial court’s rulings as to appellant’s Batson challenges are
clearly erroneous.  Accordingly, we overrule appellant’s second issue on
appeal.

 

 

III.     Conclusion

            Having overruled
both of appellant’s issues, we affirm the judgment of the trial court.

 

                                                                                    

                                                                        /s/        Kent
C. Sullivan

                                                                                    Justice

 

 

Panel consists of Justices Frost,
Boyce, and Sullivan.

Do
Not Publish — Tex. R. App. P. 47.2(b).

 









[1]
Batson v. Kentucky, 476 U.S. 79 (1986).





[2]
We note that appellant argues the shooting was an accident.  Specifically, in
an attempt to justify an instruction on negligent homicide, appellant argues
that at the time he shot Jonathon, he was in a dramatically disoriented state
of mind.  We find appellant’s argument inapposite.  First, appellant appears to
confuse the issue of intent with sanity, an issue not submitted to the jury.  See
Tex. Penal Code Ann. § 8.01 (Vernon 2003). Second, while the accidental
discharge of a gun may constitute criminally negligent homicide, appellant does
not actually claim that the gun accidentally discharged in this case.  See
Branham v. State, 583 S.W.2d 782, 785 (Tex. Crim. App. 1979) (accidental
discharge raised the issue where the gun discharged when the defendant was
grabbed by a third party and where the defendant thought the gun was unloaded,
did not intend to fire the gun, and did not have her finger on the trigger); Moore
v. State, 574 S.W.2d 122, 124 (Tex. Crim. App. 1978) (accidental discharge
raised the issue of criminal negligence where the defendant was unfamiliar with
guns, had never before seen the particular shotgun causing the decedent’s
death, thought the gun was unloaded, and grabbed the gun from another’s hands
when the gun discharged).