United States Court of Appeals
Fifth Circuit

**F I L E D**

June 1, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**

**For the Fifth Circuit**

No. 04-70046

MARIANO JUAREZ ROSALES,

Petitioner - Appellant,

VERSUS

DOUG DRETKE, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Southern District of Texas
H-03-cv-01016

Before DAVIS, SMITH and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.[*]

Petitioner Mariano Rosales was convicted of capital murder in Texas and sentenced to death. He now seeks a certificate of appealability from the district court's denial of habeas corpus relief. Because Rosales has failed to make a substantial showing of a denial of a constitutional right on the issues of ineffective assistance of counsel and denial of a mitigation instruction based on voluntary intoxication, we deny his application for COA as to those issues. Because reasonable jurists could disagree over whether the

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

procedural bar should apply to his <u>Batson</u> claim, we grant COA as to that issue only.

## I.

Rosales was convicted and sentenced to death in November 1985 for the capital murder of Rachel Balboa committed during a burglary. On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence. <u>Rosales v. State</u>, 748 S.W.2d 451 (Tex. Crim. App. 1987). In response to Rosales' state application for habeas relief alleging that appellate counsel violated his constitutional right to effective legal assistance, the Texas Court of Criminal Appeals granted Rosales a new appeal. <u>Ex parte Rosales</u>, No. 70,847 (Tex. Crim. App. May 10, 1989)(unpublished). The Texas Court of Criminal Appeals again affirmed Rosales' conviction and sentence on his second direct appeal. <u>Rosales v. State</u>, 841 S.W.2d 368 (Tex. Crim. App. 1992). The Supreme Court denied Rosales' petition for writ of certiorari, <u>Rosales v. Texas</u>, 510 U.S. 949 (1993).

In October 1996, Rosales filed a second state application for writ of habeas corpus. The trial court entered findings of fact and conclusions of law recommending denial of relief. The Court of Criminal Appeals adopted the trial court's findings and based on that record and its own review, denied relief. <u>Ex Parte Mariano Juarez Rosales</u>, Application No. 16,180-03 (Tex. Crim. App. Sept. 25, 2002)(unpublished opinion).

Rosales filed his federal habeas petition in March 2003, raising four claims for relief. In September 2004, the district court granted the Director's motion for summary judgment, denied Rosales' request for discovery, habeas relief and a COA. Rosales timely appealed and now seeks a COA from this court.

2

II.

The Court of Criminal Appeals summarized the relevant facts of the crime in its

opinion on direct appeal:

> The evidence at guilt/innocence shows that appellant was a forty-six year old businessman in Houston. He and his wife of twenty-seven years, Mary Rosales, had six children. In 1984 appellant and his wife began to experience marital difficulties, and in January of 1985, Mary began seeing a twenty-four year old man, Hector Balboa. In February, Mary moved into a trailer she and appellant owned. She began spending some nights with Hector at the home where he lived with his mother and two sisters. In early March Mary sought a divorce. She still saw appellant on a daily basis, however, and conjugal relations between them continued. At one point appellant asked Mary if she was seeing Hector, with whom he was acquainted, and she admitted that she was.
>
> On Friday, March 29, 1985, Mary agreed to seek marriage counseling with appellant. She had plans to meet Hector that evening, but appellant asked her not to stay out long because he wanted to meet with her later. Mary agreed in order to placate appellant, but ultimately spent the night at Hector's house. Appellant went out that night with a friend, T. J. Tristan, and drank more than "six or eight beers" and part of "a fifth of liquor." He was last seen by Tristan at about 3:00 a.m. on the morning of Saturday, March 30, 1985.
>
> At about 7:00 a.m. appellant telephoned Hector's brother in an effort to find out where Hector lived. He spoke to Hector's niece, who was able to provide him the unlisted telephone number but not the address. He hung up before the girl could bring her father to the phone. Appellant next called Hector's home and spoke to his sister, Patricia Balboa. He told Patricia he was a friend of Hector's who wanted to come visit him sometime, and asked her for directions to the house. She complied. Fifteen minutes later appellant walked into the house with a pistol in his hand. Without a word he walked up to Pete Rodriguez, Patricia's boyfriend, who was watching television on a sofa, and shot him at point blank range in the head, killing him. He then shot Patricia in the chest, crossed the room, and shot her again in the back. Appellant next proceeded to the front bedroom, where fifteen

3

year old Rachel Balboa was asleep. He shot her twice, mortally.[2] He then went to Hector's room and fired through the door, striking Hector twice. Appellant kicked the door open and a struggle ensued, during which both Hector and appellant were shot. Hector fled outside, followed by appellant, who continued to point the pistol at Hector and pull the trigger, though the gun was out of rounds. Appellant then got in his truck and drove away. Hector and Patricia survived.

Rosales v. State, 841 S.W.2d at 381.

Additional facts necessary to the issues will be presented in the sections that follow.

III.

Rosales filed the instant Section 2254 application for habeas relief after the April 24, 1996 effective date of the Antiterrorism and Effective Death Penalty Act (AEDPA). His application is therefore subject to the AEDPA. Lindh v. Murphy, 521 U.S. 320, 336(1997). Under the AEDPA, a petitioner must obtain a COA before appealing the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(2). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. . . .'" Miller-El v. Cockrell, 123 S.Ct. 1029, 1039 (2003) (citing 28 U.S.C. §2253(c)(1)) . "The COA statute requires a threshold inquiry into whether the circuit court may entertain an appeal." Id. (citing Slack v. McDaniel, 529 U.S. 473, 482 (2000); Hohn v. United States, 524 U.S. 236, 248 (1998)). A COA will be granted only if the petitioner

---

[2] Both Patricia and Rachel were pregnant, and engaged to be married.

makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983) (citation and internal quotation marks omitted)(emphasis in original). Any doubt regarding whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. Fuller v. Johnson, 114 F.3d 491, 495 (5th Cir. 1997).

The analysis "requires an overview of the claims in the habeas petition and a general assessment of their merit." Miller-El, 123 S.Ct. at 1039. The court must look to the district court's application of AEDPA to the petitioner's constitutional claims and determine whether the court's resolution was debatable among reasonable jurists. Id. "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Id. Rather, "'[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" Id. at 1040. (citing Slack v. McDaniel 529 U.S. 473, 484).

IV.

Rosales asks this court to grant a COA in connection with the following claims:

1.      Whether Rosales' Batson claim is procedurally defaulted;

2.      Whether Rosales was entitled to a mitigation instruction based on voluntary intoxication; and

5

3. Whether Rosales received ineffective assistance of counsel when
   a. At the guilt-innocence phase of trial, counsel failed to present psychiatric evidence;
   b. At the punishment phase of trial, counsel failed to present psychiatric evidence;
   c. At the punishment phase of trial, counsel failed to offer certain character witnesses;
   d. The trial court required Rosales to go to trial without counsel of his choice; and
   e. The trial court denied a continuance to allow Rosales to go to trial with counsel of his choice.

For essentially the reasons stated by the federal district court, we refuse a certificate on issue two, sustaining the trial court's refusal to give a mitigation instruction on voluntary intoxication, and issue three, Rosales' claim of ineffective assistance of counsel. We are not persuaded that jurists of reason could disagree with the district court's resolution of these issues nor could they conclude that they are adequate to deserve encouragement to proceed further. As discussed in more detail below, we reach a different conclusion on issue one, Rosales' Batson claim.

Rosales alleges that the state's use of race-based peremptory strikes violated the Equal Protection Clause of the Constitution. The federal district court noted that the Texas state court relied on an adequate and independent state law ground to deny relief and honored that procedural default. Before this court, Rosales argues that it was error to honor the state court's ruling on procedural default because the procedural default rule applied was not firmly established at the time of his trial. Jurists of reason could disagree with the district court's conclusion.

At trial, on the first day of jury selection, the State used peremptory strikes to excuse three venire panel members, Esmerelda Lopez, Alicia Taylor, and Raymond Trevino. The next morning, the defense raised the matter with the trial court. Counsel said that they wanted to take up the "familiar patterns already developing" and pointed out that the State had used peremptory strikes on "two Mexican Americans and one black woman." Counsel said that Rosales had a "constitutional right to a cross section of his peers" and "if the State is going to persist in using their peremptories to eliminate all minorities, both Mexican Americans and Chicanos and black people, this defendant is going to be denied his right to a fair trial by his peers." Defense counsel asked the court to require the state to give its reason for any future peremptory strikes used to exclude minority panel members. The court denied the request. However, it did allow the parties to place into the trial record the race of each panel member on which the State used a peremptory strike and granted the defense's request for a running objection on the issue.

After the first day of jury selection, the defense objected to the state's use of a peremptory strike against a minority panel member once more in connection with juror James Hamilton, who was black. The defense stated that the state's strike was "blatantly racial" and complained again that the procedure violated Rosales' right to a jury of his peers and his right to a jury drawn from a cross section of the community.

On direct appeal, Rosales argued that the trial court erred in failing to require the state to explain its use of peremptory challenges against Hispanic venire persons. Rosales argued that his objection alerted the trial court to the "systematic exclusion of venire men

7

based on their race or ethnic background to invoke the protections of Batson," which case was decided between his trial and appeal. Batson v. Kentucky, 476 U.S. 79 (1986). The Court of Criminal Appeals noted that although Rosales' trial objection was couched in terms of a purported right to a fair cross section of the community on the petit jury, his objection on appeal was premised on the Equal Protection Clause of the Fourteenth Amendment, the basis for the Batson decision. It concluded that Rosales failed to make an objection adequate to raise a Fourteenth Amendment violation, and, even if he had, that he received all the relief he requested. Rosales' counsel had requested in his initial objection that the State be required to explain future peremptory challenges made against Hispanic venire persons. The court stated that record does not indicate that any another Hispanic venire persons were struck by the State.

In state writ proceedings, Rosales again raised an Equal Protection claim alleging that the trial court erred by not requiring the State to give its reasons for using peremptory strikes against minority venire persons. The state habeas court concluded that Rosales was procedurally barred from advancing that complaint in state writ proceedings because he had failed to preserve the error. Alternatively, the state habeas court found that a procedural bar prevented consideration of that claim because Rosales had already raised it on direct appeal.

Rosales again raises his Batson claim in his federal habeas petition. The federal district court concluded that state procedural law bars federal consideration of this claim. It also found that Rosales failed to meet his burden of showing that Texas did not

8

adequately and regularly enforce its procedural law in similar cases.

Jurists of reason could disagree with the district court's conclusion. Objections similar to those presented in this case were found to adequately raise a <u>Batson</u> claim in several trials that took place, like that of Rosales, in the time before <u>Batson</u> was decided. See generally <u>Henry v. State</u>, 729 S.W.2d 732 (Tex. Crim. App. 1987); <u>DeBlanc v. State</u>, 732 S.W.2d 640 (Tex. Crim. App. 1987); <u>Chambers v. State</u>, 742 S.W.2d 695 (Tex. Crim. App. 1988); <u>Tompkins v. State</u>, 774 S.W.2d 195 (Tex. Crim App. 1987), aff'd 490 U.S. 754 (1987); <u>Trevino v. Texas</u>, 503 U.S. 562 (1992). The cases relied on by the State as establishing that the Texas contemporaneous objection rule was strictly and regularly applied to this issue involved situations in which the defendants failed to make any objection or create any record regarding peremptory strikes of minority members of the venire. <u>Williams v. State</u>, 773 S.W.2d 525 (Tex. Crim App. 1988); <u>Matthews v. State</u>, 768 S.W.2d 731 (Tex. Crim. App. 1989).

Because jurists of reason would find it debatable whether the district court was correct in its procedural ruling as to whether the State strictly or regularly followed a procedural bar to pre-<u>Batson</u> challenges to the State's use of peremptory challenges around the time of Rosales' direct appeal, we grant COA on this issue.

V.

For the foregoing reasons, Rosales' petition for COA is denied as to issue two, the trial court's refusal to give a mitigation instruction on voluntary intoxication, and issue three, Rosales' claim of ineffective assistance of counsel. Rosales' petition for COA on

issue one, his <u>Batson</u> claim, is granted.

The clerk will calender this case for oral argument and establish a briefing schedule for supplemental briefs on the merits of this issue.

Petition for COA DENIED IN PART and GRANTED IN PART.