**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 3, 2006**

**Charles R. Fulbruge III**
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 04-70046

MARIANO JUAREZ ROSALES,

Petitioner - Appellant,

VERSUS

DOUG DRETKE, Director,
Texas Department of Criminal Justice, Correctional Institutions Division,

Respondent - Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, SMITH and DENNIS, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Petitioner Mariano Rosales appeals the district court's denial of his petition for writ of habeas corpus. Because we conclude that the procedural default applied by the Texas Court of Criminal Appeals to bar review of Rosales' Batson[1] claim was not "firmly established and regularly followed" by that court, we vacate the district court's dismissal of Rosales' writ application and remand for further proceedings.

I.

A.

The Court of Criminal Appeals summarized the relevant facts of the crime in its opinion on direct appeal:

---

[1] Batson v. Kentucky, 476 U.S. 79 (1986).

The evidence at guilt/innocence shows that appellant was a forty-six year old businessman in Houston. He and his wife of twenty-seven years, Mary Rosales, had six children. In 1984 appellant and his wife began to experience marital difficulties, and in January of 1985, Mary began seeing a twenty-four year old man, Hector Balboa. In February, Mary moved into a trailer she and appellant owned. She began spending some nights with Hector at the home where he lived with his mother and two sisters. In early March Mary sought a divorce. She still saw appellant on a daily basis, however, and conjugal relations between them continued. At one point appellant asked Mary if she was seeing Hector, with whom he was acquainted, and she admitted that she was.

On Friday, March 29, 1985, Mary agreed to seek marriage counseling with appellant. She had plans to meet Hector that evening, but appellant asked her not to stay out long because he wanted to meet with her later. Mary agreed in order to placate appellant, but ultimately spent the night at Hector's house. Appellant went out that night with a friend, T. J. Tristan, and drank more than "six or eight beers" and part of "a fifth of liquor." He was last seen by Tristan at about 3:00 a.m. on the morning of Saturday, March 30, 1985.

At about 7:00 a.m. appellant telephoned Hector's brother in an effort to find out where Hector lived. He spoke to Hector's niece, who was able to provide him the unlisted telephone number but not the address. He hung up before the girl could bring her father to the phone. Appellant next called Hector's home and spoke to his sister, Patricia Balboa. He told Patricia he was a friend of Hector's who wanted to come visit him sometime, and asked her for directions to the house. She complied. Fifteen minutes later appellant walked into the house with a pistol in his hand. Without a word he walked up to Pete Rodriguez, Patricia's boyfriend, who was watching television on a sofa, and shot him at point blank range in the head, killing him. He then shot Patricia in the chest, crossed the room, and shot her again in the back. Appellant next proceeded to the front bedroom, where fifteen year old Rachel Balboa was asleep. He shot her twice, mortally.[2] He then went to Hector's room and fired through the door, striking Hector twice. Appellant kicked the door open and a struggle ensued, during which both Hector and appellant were shot. Hector fled outside, followed by appellant, who continued to point the pistol at Hector and pull the trigger, though the gun was out of rounds. Appellant then got in his truck and drove away. Hector and Patricia survived.

Rosales v. State, 841 S.W.2d 368, 381 (Tex. Crim. App. 1992).

B.

---

[2] Both Patricia and Rachel were pregnant, and engaged to be married.

2

Rosales was convicted and sentenced to death in November 1985 for the capital murder of Rachel Balboa committed during a burglary. On direct appeal, the Texas Court of Criminal Appeals affirmed the conviction and sentence. Rosales v. State, 748 S.W.2d 451 (Tex. Crim. App. 1987). In response to Rosales' state application for habeas relief alleging that appellate counsel violated his constitutional right to effective legal assistance, the Texas Court of Criminal Appeals granted Rosales a new appeal. Ex parte Rosales, 769 S.W.2d 248 (Tex. Crim. App. 1989). In this second appeal, Rosales raised among other issues that the trial court erred by not requiring the state to explain its peremptory challenges of Hispanic veniremen. The Texas Court of Criminal Appeals held that the claim as presented appeared to be premised on the Sixth Amendment, which had been rejected by the Supreme Court in Holland v. Illinois, 493 U.S. 474 (1990), as a basis for a Batson claim. The court also held that to the extent Rosales raised an Equal Protection complaint under Batson, his trial objection was inadequate to preserve the claim for appellate review.[3] The Texas Court of Criminal Appeals thus affirmed Rosales' conviction and sentence. Rosales v. State, 841 S.W.2d 368 (Tex. Crim. App. 1992). The Supreme Court denied Rosales' petition for writ of certiorari, Rosales v. Texas, 510 U.S. 949 (1993).

In October 1996, Rosales filed a state application for writ of habeas corpus. Among other issues, Rosales complained that the trial court's failure to have the State specify the reasons for its

---

[3] The court also noted that assuming that Rosales' objection was adequate to preserve the equal protection complaint for review, Rosales had received all the relief he requested. In Rosales' first objection, he asked that the state be required to explain future peremptory challenges. Rosales' complaint on appeal was directed towards Hispanic panel members only and the court stated that no further Hispanics were challenged by the state.

3

peremptory strikes denied him a fair trial.[4]  The state habeas court noted that on direct appeal the Texas Court of Criminal Appeals had concluded that Rosales failed to preserve his complaint for review.  It concluded that because Rosales failed to preserve the error, he was barred from advancing this claim and denied  relief.  The Court of Criminal Appeals adopted the trial court's findings and based on that record and its own review, denied relief.  Ex Parte Mariano Juarez Rosales, Application No. 16,180-03  (Tex. Crim. App.  Sept. 25, 2002)(unpublished opinion).

Rosales filed his federal habeas petition in March 2003, raising four claims for relief.  In September 2004, the district court granted the Director's motion for summary judgment, denied Rosales' request for discovery, habeas relief and a certificate of appealability ("COA").  The district court concluded that state procedural law barred consideration of his Batson claim.  Rosales timely appealed.   We concluded that reasonable jurists could disagree over whether the procedural bar should apply to Rosales' Batson claim and granted COA on that issue.  COA was denied on Rosales' other claims.  Rosales v. Dretke, 133 Fed. Appx. 135;  2005 U.S. App. LEXIS 10268.  Thus we are now faced with the question whether the district court was correct to honor the procedural bar applied by the Texas Court of Criminal Appeals.

C.

The following facts are relevant to jury selection and objections by Rosales.  On the first day of jury selection, the parties questioned seven potential jurors.  The prosecution used peremptory challenges to remove three jurors: Ms. Lopez, Ms. Taylor, and Mr. Trevino.  The next morning trial counsel objected to the prosecution's peremptory strikes:

---

[4] Rosales' complaint on habeas addressed the use of peremptory strikes against all minorities, not just Hispanics as the issue was raised on direct appeal.

4

Trial counsel: Your Honor, the other matter I would like to take up with the Court is the familiar patterns already developing, Your Honor, on the selection of these jurors, and the State has exercised strikes on two Mexican Americans and one black woman, and I feel that this defendant has federal and a state constitutional right to a cross section of his peers, and if the State is going to persist in using their peremptories to eliminate all minorities, both Mexican Americans and Chicanos and the black people, this defendant is going to be denied his right to a fair trial by his peers. My proposal is this - we know the State has a right to peremptor[y] challenges. I think the Court may not favor their striking minorities without reason. I think if in the future the States strikes what is obviously a minority juror, that they state in the record their particular reasons for exercising that peremptory challenge, and I so propose it and request it and move the Court to so follow that procedure.

Trial court: I will deny your request to have them specify the reason for the exercise of peremptory challenges.

Trial counsel: May I have a running objection to that?

Trial court: Yes sir.

Trial counsel: May I have in the record, Your Honor, after each juror is selected, that I - and leaves the room, that we state in the record what the race of that juror is, and if there is any problem about it, then we can straighten it out then, if there is any issue of fact as to what color or race that particular juror is, but I would like to have that in the record specifically on the peremptory challenges the State exercises in the future.

Trial court: Very well. As I recall, obviously, Ms. Lopez, juror number one, and Mr. Trevino, number six, were both Mexican. Ms. Taylor was a black female.

On subsequent days, the prosecution struck Mr. Hamilton (a black male), Mr. Deen (an East Indian male), Ms. Walker (a black female), and Mr. Saenz (presumed Hispanic male). Even though defense so requested, the trial court did not require the prosecutor to justify its use of peremptory challenges. Of those minority potential jurors struck after the first day of jury selection, Rosales re-raised his

5

objection only as to the dismissal of Mr. Hamilton, who was black:

> Trial counsel: Your Honor, that appears just blatantly a racial strike, Your Honor, and I respectfully ask the State to justify using a strike on that juror. I think it's discriminatory. It violates this defendant's right to a jury of his peers and a cross section of the community, and if the Court would check over this information sheet, this juror is qualified from the State's point of view as any juror I have ever seen and they use a strike on him, and I move the Court to have the State justify this strike.

The district court again denied the request.

## II.

Federal court review of a question of federal law decided by a state court is generally unavailable if the state court resolved the question on a "state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729 (1991). This rule is grounded in concerns of comity and federalism. It is designed to prevent federal courts from deciding cases on federal constitutional grounds regarding a petitioner's confinement that would be advisory because the confinement can be upheld on an independent and adequate state law basis. Id. at 730. When, as in this case, the independent and adequate state law ground is a state procedural default rule, another concern applies. A "habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance." Id. The procedural default rule also prevents habeas petitioners from avoiding the exhaustion requirement by defaulting their federal claims in state court. Id.

To be "adequate" to support the judgment, the state law ground must be both "firmly established and regularly followed." Ford v. Georgia, 498 U.S. 411, 424 (1991). If the state law

6

ground is not firmly established and regularly followed, there is no bar to federal review and a federal habeas court may go to the merits of the claim. Barr v. Columbia, 378 U.S. 146, 149 (1964). An important consideration in determining whether an "adequate" state law ground exists is the application of the state law ground to identical or similar claims. Amos v. Scott, 61 F.3d 333, 340-41 (5th Cir. 1995). The adequacy of a state law ground to preclude federal court review of federal constitutional claims is a federal question which is reviewed by this court *de novo*. Howlett v. Rose, 496 U.S. 356, 366 (1990).

Rosales was tried in 1985. The Supreme Court's decision in Batson v. Kentucky, 476 U.S. 79 (1986), which is central to a decision in this case, was decided in 1986. Rosales' case on direct appeal was decided by the Texas Court of Criminal Appeals in 1992. A brief history of pre- and post-Batson jurisprudence is helpful in understanding this case.

Batson's antecedent, Swain v. Alabama, 380 U.S. 202 (1965), recognized that an equal protection violation occurs when the State systematically uses its peremptory challenges for the purpose of excluding members of a black defendant's race from his petit jury. Id. at 209. To prove a violation under Swain required proof that the prosecutor "in case after case, whatever the circumstances, whatever the crime and whoever the defendant or the victim . . . [,was] responsible for the removal of Negroes who had been selected as qualified jurors by the jury commissioners and who had survived challenges for cause, with the result that no Negroes ever serve on petit juries." Id. at 223-24. "Batson dropped the Swain requirement of proof of prior discrimination, holding it possible for a defendant to make out a prima facie equal protection violation entirely by reference to the prosecution's use of peremptory challenges in the circumstances of the defendant's own case." Ford, 498 U.S. at 420. The Batson decision was applied retroactively for cases, like Rosales',

7

pending on direct review or not yet final when <u>Batson</u> was decided. <u>Griffith v. Kentucky</u>, 479 U.S. 314 (1987). Thus, courts for some period after <u>Batson</u> were faced with the challenge of determining what sorts of objections were adequate to preserve <u>Batson</u> error in pre-<u>Batson</u> trials.

We have examined a number of decisions rendered by the Texas Court of Criminal Appeals in cases where the defendants were in the same position as Rosales: their trials occurred before <u>Batson</u> was announced but their direct appeals were decided after <u>Batson</u>. In these cases, the Texas Court of Criminal Appeals responded to the change in the law wrought by <u>Batson</u> by allowing with some leniency objections that did not meet the strict test of <u>Swain</u> and inartfully presented claims under the theories yet to be recognized in <u>Batson</u> and its progeny.

In <u>Henry v. State</u>, 729 S.W.2d 732 (Tex. Crim. App. 1987), the defendant after voir dire made a motion pointing out that he was black, that there were seven black persons in the array and requesting the court to instruct the district attorney not to use his peremptory strikes to eliminate the black prospective jurors. The state struck all the black prospective jurors. After the jury was sworn, the defendant objected to the use of the strikes against all the black jurors and requested a new jury that would present a "fair representation of this community" so the defendant could "get a fair trial by the jurors of its peers." <u>Id.</u> at 735. The Texas court found that these objections "sufficiently raised the issue of the State's use of its peremptory strikes at trial to invoke <u>Batson</u> protections on appeal." <u>Id.</u> at 736.

In <u>DeBlanc v. State</u>, 732 S.W.2d 640 (Tex. Crim. App. 1987), after the jury array had been seated, the defendant challenged the array based on the under-representation of blacks on the array. The defendant argued that this under-representation increased the likelihood that he would be denied his Sixth Amendment right to a "fair cross-section of the community on the jury panel." The

8

objection was overruled. The defendant noted his exception to the state's cause challenges against several black prospective jurors and noted for the record that several jurors struck by the state were black without raising an exception. The Texas court concluded

> Clearly appellant did not voice a clear objection to the use of the peremptory strikes by the prosecutor. However, by virtue of his motion to challenge the array and his efforts to point out that the prosecutor was using his peremptories on blacks, it is clear from the record that appellant was concerned with the exclusion of blacks from the jury and did present his concerns to the trial judge. Although we caution defense attorneys that such efforts would be inadequate in cases tried after Batson, we are compelled by fairness to hold that appellant has properly preserved the issue.

Id. at 642.

In Chambers v. State, 742 S.W.2d 695 (Tex. Crim. App. 1988), the Texas court stated only that the defendant claims that "he was denied a fair trial under the Fourteenth Amendment due to the prosecutor's use of peremptory challenges to strike all of the blacks from the jury panel." There is no description of the defendant's objection at trial. The case was remanded for consideration of Chambers' Batson challenge.

In deciding Rosales' Batson challenge, the Texas Court of Criminal Appeals applied a more exacting standard for the objection necessary to preserve a Batson claim than it did in Henry, DeBlanc and Chambers. In Rosales' case, the court citing Trevino v. Texas, 469 U.S. 1222 (1992), noted that the Supreme Court held

> that federal judicial review of a Batson claim is not barred by state procedural default rules bearing on the specificity of objections at trial so long as the accused either invoked Batson's Fourteenth Amendment antecedent, Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed. 2d 759 (1965), or in any event referred to a practice of using peremptory challenges to exclude minority members from jury service "over a long period of time," or "historically and habitually." Here appellant came no closer to invoking Swain than to remark preliminarily that "familiar patterns [were] already developing."

3841 S.W.2d at 380. Thus, the objection the Texas court required to prove a Batson claim in Rosales' case is much stricter than it required in the decisions discussed above.

Even Trevino v. Texas, 503 U.S. 562 (1992), reversing 815 S.W.2d 592 (Tex. Crim. App. 1991), a case relied upon by the State, supports our conclusion that the application of the procedural bar to Rosales' case is not proper. Trevino was tried in 1984, pre-Batson. The Texas Court of Criminal Appeals affirmed Trevino's conviction, characterizing his objections to the jury selection process as arising under the Sixth Amendment. Under Holland v. Illinois, 493 U.S. 474 (1990), the Sixth Amendment does not prohibit the prosecution from exercising its peremptory challenges to exclude potential jurors based on race. The United States Supreme Court looked at both his trial court objection and that raised on appeal to determine that he had adequately preserved a Batson claim similar to those raised in Batson and Ford. At trial, Trevino raised the following objection:

> The prosecution . . . historically and habitually uses its peremptory challenges to strike black people and other minorities who are otherwise qualified. . . . This practice deprives the Accused of a jury representing a fair cross-section of the community in violation of the Sixth Amendment to the United States Constitution.

On appeal Trevino argued that the "prosecution's race based use of challenges violated his 'rights to due process of law and to an impartial jury fairly drawn from a representative cross section of the community'" founded on the Sixth and Fourteenth Amendments. Trevino acknowledged that his claim would not satisfy Swain, but noted that Batson was awaiting review. Trevino's objections were somewhat more precise than those of Rosales but still do not meet the specificity of the rule applied by the Texas Court of Criminal Appeals to Rosales' writ application.

In fact, except for Trevino which was reversed by the Supreme Court, the state cites no Texas case with a pre-Batson trial in which the defendant made an objection like that made by Rosales that

10

the Texas Court of Criminal Appeals rejected as inadequate or procedurally barred. The cases relied on by the State as establishing that the Texas contemporaneous objection rule was strictly and regularly applied to this issue involved situations in which the defendants failed to make any objection or create any record regarding peremptory strikes of minority members of the venire. Williams v. State, 773 S.W.2d 525 (Tex. Crim. App. 1988); Matthews v. State, 768 S.W.2d 731 (Tex. Crim. App. 1989).

The principal substantive argument the state made during oral argument was that the Texas Court of Criminal Appeals in Henry, DeBlanc, and Chambers erred in applying such a relaxed standard to preserve a Batson objection and that Rosales should not receive a windfall on account of this error. The Texas Court of Criminal Appeals is entitled to exercise whatever leniency or grace it wishes in establishing its procedural rules. Our task is to determine whether procedural rules applied by the state court to bar merits review of a habeas claim have been strictly and regularly applied. If the state procedural rule has not been strictly and regularly applied, we must review the merits of the petitioner's constitutional claims.

## III.

In summary, the procedural bar applied by the Texas Court of Criminal Appeals and honored by the district court was not adequate to support the judgment and preclude federal court review of Rosales' constitutional claim. The procedural bar was not firmly established and regularly followed by the Texas Court of Criminal Appeals for cases like Rosales', which were on direct appeal when Batson was decided. For the foregoing reasons, we vacate the district court's order dismissing Rosales' habeas petition and remand this case to the district court for further proceedings and to consider additional arguments presented by the parties which the district court did not reach.

11

VACATED.  REMANDED.